1    Robert S. Besser SBN 46541
     LAW OFFICES OF ROBERT S. BESSER
2    100 Wilshire Blvd., Suite 700
     Santa Monica, California 90401
3    Tel:   (310) 394-6611
     Fax:   (310) 394-6612
4    rsbesser@aol.com

5

6    Attorneys for Plaintiff
     JULIAN AHAB JOSEPH NAFAL

7

8

9                          UNITED STATES DISTRICT COURT

10                    CENTRAL DISTRICT OF CALIFORNIA

11

12    JULIAN AHAB JOSEPH NAFAL, an        Case No.
     individual

13                Plaintiff,          COMPLAINT FOR COPYRIGHT
                                  INFRINGEMENT

14         vs.

15    SHAWN CARTER p/k/a Jay Z,
     TIMOTHY MOSELY p/k/a TIMBALAND,
     KYAMBO JOSHUA, ROC-A- FELLA      DEMAND FOR JURY TRIAL
16    RECORDS, LLC, TIMBALAND
     PRODUCTIONS, INC., UNIVERSAL MUSIC
17    GROUP, OSAMA AHMED FAHMY,
     MOHEN MOHAMMAD JABER
18    and Does 1 through 100,

19                Defendants.
     _____/
20

21

22         JULIAN AHAB JOSEPH NAFAL ("Nafal"), for his claims against Defendants

23    alleges as follows.

24              INTRODUCTION AND BACKGROUND OF PRIOR ACTIONS

25         1.       Nafal brings this action so that Defendants' liability and damages for copyright

26    infringement for the sampling of the music of the Egyptian song *Khosara Khosara,* without

27                                -1-

28                 COMPLAINT FOR COPYRIGHT INFRINGEMENT

authority to do so, for use in Jay-Z's massive hit song *Big Pimpn'* and the subsequent exploitation of various versions of *Big Pimpin'* by Defendants, can finally be determined and the appropriate relief granted. To date there been two prior attempts by Nafal to hold Defendants liable, but each attempt was dismissed without a judgment on the merits because of procedural issues resulting in lack of standing by Nafal.

2.     Pursuant to the requirement of the 1909 Copyright Act, Nafal is joining Osama Ahmed Fahmy ("Fahmy") as a necessary party Defendant because Fahmy is an heir of Baligh Hamdy ("Hamdy") the deceased writer of the music to Khosara, Khosara. Fahmy is also the duly appointed holder of a Power of Attorney for the other two living heirs of Hamdy.

3.     Nafal brings this action pursuant to a license agreement (the "2001 License Agreement") granted by Fahmy, as the holder of the power of attorney for the heirs of Hamdy who had died in 1993, and the  Agency Contract and Agreement (the 2001 Agency Agreement") both made with Farouk Fathalla Sima ("Sima") in January of 2001.  True and exact copies of the original 2001 License Agreement and the 2001 Agency Contract are attached hereto as Exhibits "A" and "B" and incorporated herein by this reference.

FIRST NAFAL ACTION

4.     The first action, *Ahab Joseph ("Julian") Nafal v. Shawn Carter, et al.*, CV 05-2480 SVW ("Nafal v. Carter I") was brought by Nafal in 2005 in his capacity as "co-exclusive licensee" of all of the copyrights in *Khosara Khosara* pursuant to the 2001 License Agreement and co-agent with Sima under the 2001 Irrevocable and Assignable Agency Contract.  By order filed August 3, 2007, (Document No. 197) Judge Stephen V. Wilson granted Defendants' Motion For Summary Judgment on two grounds: (1) the ground that Nafal was not a true co-exclusive licensee because of the control over Nafal's actions by

-2-

1   the original licensee of the License Agreement, Sima; and (2) the failure to join the Hamdy

2   heirs as required by the 1909 Copyright Act.

3        5.    The lack of control found by Judge Wilson included Nafal's inability to fully

4   exploit *Khosara Khosara* because some of Nafal's actions had to be approved by Sima in

5   advance (Docket No. 197, at p. 30, ll 3-9) . Very importantly, though, Judge Wilson ruled

6   only after first analyzing the 2001 License Agreement and finding that it could be

7   interpreted as a valid exclusive license:

8   > "While the contractual language is sloppy, and perhaps the result of a poor
9   > translation, the Court must read the License Agreement in its entirety.  In
10   > particular, the Court cannot ignore the 'recitals' section of the License
11   > Agreement, in which the Hamdy heirs specify their 'desire[ ] to license certain
12   > rights in the Copyrights to [Sima]' through this written instrument.  Although
13   > inartful, the Court concludes that the operative language of the License
14   > Agreement was aimed at conveying the Hamdy heirs' interests in the
15   > copyrights of Khosara, Khhosara, not the mere products in which Khosara,
16   > Khosara may physically appear.  Thus the Court would tentatively conclude
17   > that Sima obtained an exclusive license in Khosara, Khosara." (Document No.
18   > 197, at p. 25, ll 9-20)

     6.    The asserted lack of control is no longer an issue because Nafal is now the

holder of the entire 100% interest in the 2001 License Agreement pursuant to the 2008

assignment (the "2008 Sima Assignment") from Sima to Nafal. A True and exact copy of

the 2008 Sima Assignment is attached hereto as Exhibit "C" and incorporated herein by this

reference.

     7.    The other defect cited by Judge Wilson has been cured by joining Fahmy as a

necessary party Defendant in this action.

## THE SECOND NAFAL ACTION

     8.    The second action, *Nafal v. Jay-Z, et al.*, 11-cv-06238 SVW (Nafal v. Carter

II) was brought by Nafal in 2011 alleging that he had cured the issue of control that had been

fatal to his standing in Nafal I by becoming the sole exclusive licensee pursuant to the Sima

-3-

1  Assignment. Nevertheless, by Order filed March 2, 2012, Judge Wilson granted Defendants'

2  Motion To Dismiss on the ground that Nafal lacked standing because he had failed to join

3  the copyright owners, i.e., the Hamdy heirs. Judge Wilson stated:

"Assuming for the sake of the instant Motion that, pursuant to the 2008
Assignment Agreement, Plaintiff does own '100% of an exclusive license,' he
still lacks standing.  In other words, under the Ninth Circuit's interpretation of
the 1909 Act, even assuming that Plaintiff is a co-exclusive licensee, he still
must join the copyright owners."
(*Docket No. 82, p.5 of 6*)

9.     As set forth above, this procedural defect has now been cured by the joinder
of Fahmy as a necessary party Defendant in this action.

PARTIES

10     Nafal is an individual resident of the County of Santa Barbara, State of
California.

11.     Fahmy is a resident of Egypt and one of the heirs of Hamdy and the
holder of a Power of Attorney to act on behalf of the other living heirs, who collectively
inherited and own all the copyrights in the music to *Khosara, Khosara,* subject to the License
Agreement.

12.     On information and belief, Mohen Mohammad Jaber ("Jaber") is a resident of
Egypt. Jaber is joined as a necessary party Defendant on the basis that he claims ownership of
the economic rights in the music to *Khosara,Khoosara* based upon an agreement with Fahmy
in 2002.

13.     Shawn Carter (pka Jay-Z) (hereinafter "Carter" or "Jay-Z") is an entertainer
who records, produces and performs music within the "rap/hip hop" genre.

14.     Timothy Mosely ("Mosely") records and produces in affiliation with Jay-Z.

15.     Kyambo Joshua ("Joshua") likewise records and produces in affiliation with
Jay-Z.

-4-

16.     On information and belief Universal Music Group has a principal place of business in Los Angeles County and is actively engaged in the explotation of recorded music, including the recording of Big Pimpin.

17.     On information and belief, Roc-A-Fella Records, LLC and Timbaland Productions, Inc.,  are business entities engaged in the production and exploitation of recorded music and are now owned and controlled by Universal Music Group.

18.     On information and belief, Does 1 through 100 are business entities and individuals  engaged in the production and exploitation of recorded music.

JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1338 because Plaintiff's claims arise under the United States Copyright Act, 17 U.S.C. §101, *et seq*.

20.     On information and belief, venue is proper in this District because Jay-Z resides in this District and all Defendants conduct business in this District and have profited, and are now  profiting from the exploitation and alleged infringement of Khosara, Khosara in this District.

NAFAL'S LICENSE AND RIGHTS

21.     Nafal's chain of title to his rights begins with the irrevocable 2001 Agency Contract between Fahmy, acting pursuant to his Power of Attorney for the Heirs, and Sima, dated January 27, 2001. The 2001 Agency Contract notes that the economic rights in Khosara, Khosara have been violated and grants Sima broad authority over an infringement action, including the selection of attorneys; the right to negotiate an amicable settlement to terminate the action; the right to receive the compensation; the right to grant releases; and the right to reassign his designation to any third party of his choosing, including Nafal.

_____

22.     The next step was the execution by Fahmy of the 2001 License Agreement. The 2001 License Agreement is dated and was made January 27, 2001 and is between Fahmy and Sima.   Fahmy signed the 2001 License Agreement  and made the grants contained therein as the "Copyright Holder of all copyrights relating to the music of the song 'Khosara, Khosara.'"   The 2001 License Agreement states in Paragraph 1 that the license granted by it is "an exclusive license  to use the products which incorporate any of the intellectual property included within the Copyrights throughout the entirety of the Territory..." Paragraph 2 of the 2001 License Agreement defines the "Territory" as "all places on Earth with the exception of ... Egypt."  Paragraph 6 grants Sima the right to "prosecute all parties believed to be responsible for infringement" of Khosara, Khosara in his own name.

23.     The 2001 License Agreement states in Paragraph 7 that it shall be governed by the laws of the State of California applicable to contracts which are executed and to be wholly performed in California.

24.     The 2001 License Agreement was amended by the "Amendment To License Agreement" (the "2004 Amendment") on October 30, 2004.  The 2004 Amendment extends the term of the License Agreement to December 31, 2007, reduces the percentage to be paid to Fahmy and specifically provides for automatic five year extensions of the term after December 31, 2007. The 2004 Amendment further provides that "no right of termination may be exercised if any litigation has been or is about to be initiated by or for the Licensee with respect to the song, "Khosara, Khosara...."  A true and exact copy of the 2004 Amendment is attached hereto as Exhibit "D" and incorporated herein by this reference.

25.     On January 7, 2005, Sima assigned to Nafal one-half of Sima's rights and designations under the 2001 License Agreement and the 2001 Agency Contract (the "2005 Assignment Agreement") and secured Fahmy's express written consent thereto.  A true and

-6-

exact copy of the 2005 Assignment Agreement is attached hereto as Exhibit "E" and incorporated herein by this reference.

26.     Pursuant to the 2008 Sima Assignment, effective as of October 1, 2008, Sima assigned to Nafal the remaining one-half interest in the 2001 License Agreement and all Sima's agency rights.  As noted above, a true and exact copy of the 2008 Sima Assignment is attached hereto as Exhibit "C" and incorporated herein by this reference.

27.     Through the above set forth agreements, Nafal now owns 100% of the 2001 License Agreement and full rights under the 2001 Agency Contract.  Nafal therefore is not required to seek approval for exercising his rights thereunder.

28.     The License Agreement has not been terminated and is in full force and effect.

29.     Because the 2001 License Agreement and the 2001 Agency Contract predate the 2002 Agreement between Fahmy and Jaber, the rights under the 2001 License Agreement are superior to, and not affected by,  the rights allegedly created by the 2002 Agreement.

30.     As the holder of the 2001 License Agreement and the rights under the 2001 Agency Contract, Nafal is the sole person with the right to prosecute claims for infringement of the music to  "Khosara, Khosara" outside of Egypt.

CLAIM FOR RELIEF

(Copyright Infringement Against All  Defendants Except Fahmy and Jaber )

31.     Nafal repeats and incorporates by reference the allegations contained in Paragraphs 1 through 30 above.

32.     In or about 1957, the musical composition *Khosara Khosara* was authored and fixed in tangible form by Hamdy in Egypt. Hamdy's creation of *Khosara Khosara* was a wholly original musical composition.

33.     In or about 1960, the copyright in *Khosara Khosara* was duly registered

-7-

under Egyptian law in Hamdy's name as author and copyright owner of the music to *Khosara, Khosara*. In Egypt all agreements transferring an interest in a musical work are deposited with Egypt's Association of Authors, Composers and Editors ("SACERAU"). Attached hereto as Exhibit "E" and incorporated by reference is a true and exact copy of the English translation of the copyright certificate on record with SACERAU for the *Khosara, Khosara* composition.

34.    Attached hereto as Exhibit "F" and incorporated by reference is a true and exact copy of the English translation of the copyright certificate for musical recordings produced by Sout El Phan Company. As stated in Exhibit F, "Sout El Phan Company is not allowed to make any changes or modifications to its text or melody or to take parts of it or to insert it into another work or to take cuts of it without obtaining a prior written consent from the author or his heirs."

35.    Sout El Phan Company never obtained the consent from Hamdy or any of his heirs to incorporate parts of Khosara, Khosara into another work and thus had no power to grant a license to any entity for a derivative work of *Khosara, Khosara.* In particular, no such license could have been granted to EMI Music Arabia. Thus the "Settlement Agreement" made March 30, 2001 between Timothy Mosley and EMI Music Arabia pursuant to which EMI Music Arabia purported to grant a release to Timothy Mosely and Jay-Z among others for the unauthorized sample of the music of *Khorsara, Khorsara* in the composition Big Pimpin' is of no force or effect in this action. Furthermore, the 2001 License Agreement now held by Nafal had been issued more than 2 months before the purported Jay-Z "Settlement Agreement."

36.    The economic rights and in particular the right to make derivative works of *Khosara, Khosara* were not transferred by Hamdy or his heirs until the grant to Sima

-8-

contained in the License Agreement.

37.     Neither Nafal nor Sima has ever granted the right to any Defendant to make derivative works of the music to *Khosara, Khosara*.

38.     At all material times, Egypt and the United States were parties to the Berne Convention and all other relevant international agreements pertaining to copyrights. As a work authored by an Egyptian national, which also was first published in Egypt, *Khosara Khosara* is entitled to copyright protection in the United States.

39.     Nafal is exempt from any requirement that an application for registration of the clam to copyright in *Khosara Khosara* be made to the United States Copyright office before pursuing a claim for infringement of *Khosara Khosara*.

40.     On information and belief, Jay-Z, with the assistance and participation of Mosely and Joshua, recorded, produced, released, published, distributed, sold, performed, advertised and otherwise unlawfully used musical works that infringed Nafal's rights in "Khosara, Khosara."  The infringing works have appeared under variations of the title "Big Pimpin'" including sound recordings, and synchronisation of the song "Big Pimpin'" featuring vocals by Jay-Z. and live as well broadcast and streamed performances of the song "Big Pimpin.'" Jay-Z, Mosely and Joshua have profited and continue to profit from the exploitation of the various Big Pimpin works containing the unauthorized sample of the music of Khosara, Khosara.

41.     On information and belief, Defendants Roc-A-Fella Records, LLC, Timbaland Productions, Inc., Universal Music Group and Does 1 though 100 have and are profiting from the exploitation of Big Pimpin' and derivative works thereof all of which contain the unauthorized sample of the music of Khosara, Khosara.

42     Defendants, and each of them, have infringed the copyright to "Khosara,

COMPLAINT FOR COPYRIGHT INFRINGEMENT

Khosara," which infringement violates Plaintiffs' rights under 17 U.S.C. §106(2). The wrongful sampling by Defendants constituted the unauthorized creation of a derivative work in violation of Nafal's economic rights in the copyright to Khosara, Khosara.

43.    As a direct, proximate and foreseeable result of Defendants, and each of their infringement of the copyright to *Khosara, Khosara,* Nafal is entitled to damages, including actual damages and Defendants' profits, in an amount according to proof.

WHEREFORE, Nafal prays for relief as follows:

1.    For damages for copyright infringement, including actual damages and Defendants' profits in an amount according to proof;

2.    For costs of suit incurred herein including reasonable attorney fees; and

3.    For such other and further relief as the Court deems just and proper.

Dated: June __, 2022

LAW OFFICES OF ROBERT S. BESSER


By: *s/ Robert S. Besser*
       Attorneys For Plaintiffs




JURY DEMAND

Plaintiff Ahab Joseph Nafal hereby demands a trial by jury.

Dated: June __, 2022

LAW OFFICES OF ROBERT S. BESSER


By: *s/ Robert S. Besser*
       Attorneys For Plaintiffs



-10-
_____
COMPLAINT FOR COPYRIGHT INFRINGEMENT